UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Wazir Ricky Mohammed,

Petitioner,

v.

MEMORANDUM OPINION AND ORDER
Civil No. 01-583(MJD/SRN)

Attorney General,
Curtis J. Aljets, District
Director St. Paul District
Office of the Immigration
And Naturalization Service,

Respondent.

---

Herbert A. Igbanugo, Esq., Blackwell, Igbanugo, Engen and Saffold for and on behalf of Petitioner.

Mary Jo Madigan, Assistant United States Attorney for and on behalf of Respondent.

---

Before the Court is Petitioner's request for injunctive and declaratory relief pursuant to a writ of habeas corpus.

Petitioner is a native and citizen of Trinidad. He entered the United States of America on March 8, 1990 as a visitor for pleasure with authorization to remain in this country until September 7, 1990. Petitioner remained in the country after September 7, 1990 and continued to do so until he was deported on April 4, 2001.

On November 28, 1997, the Immigration and Naturalization Service ("INS") initiated removal proceedings against the Petitioner. A Notice to Appear was issued to Petitioner, charging him with removability pursuant to the

AUG 13 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. AUG 13 2001
DEPUTY CLERK

Immigration and Nationality Act ("INA"). 8 U.S.C. § 1227(a)(1)(B). Specifically, that Petitioner is a nonimmigrant alien that remained in the United States longer than allowed. Respondent Ex. p. 73. Petitioner was thereafter served with notice that an immigration hearing was scheduled for September 12, 2000 at 11:30 a.m. Resp. Ex. p. 82. The notice included the consequences of Petitioner's failure to appear at this hearing; that he may be taken into INS custody, or that the hearing would be held in his absence, and that an order of removal would be entered if the INS established by clear and convincing evidence that Petitioner had received notice of the hearing, and that Petitioner was removable. Id.

Petitioner did not appear for the hearing on September 12, 2000 and an order of removal in absentia was entered by the Immigration Judge on September 12, 2000. Resp. Ex. p. 71. Petitioner filed a motion to reopen the removal order claiming that his absence was due to exceptional circumstances beyond his control. Resp. Ex. p. 24. Specifically, that he was in Florida to assist and support his sister, who was gravely ill at the time. A hearing was held on Petitioner's motion to reopen on December 7, 2000. On December 11, 2000, the Immigration Judge denied the motion, finding that Petitioner failed to establish exceptional circumstances warranting the requested relief. Resp. Ex. p. 16-18.

On December 21, 2000, Petitioner appealed this decision to the Board of Immigration Appeals ("BIA"). Resp. Ex. p. 9-13. At that time, Petitioner did not specifically request an order staying the removal order. Because the appeal of the Immigration Judge's denial of Petitioner's motion to reopen did not trigger an automatic stay, the INS Deportation Office began preparations to remove

Petitioner to Trinidad. Resp. Supplement Ex. pps. 2-3. Such preparations included obtaining travel documents from the Embassy of Trinidad. In February 2001, the Acting Assistant Director for Detention and Deportation, Bruce Norum, met with Petitioner to execute the necessary documentation to obtain clearance to enter that country. Resp. Supp. Ex.; Norum Decl. ¶ 9. Mr. Norum states that before he would complete such paperwork, Petitioner insisted that he consult with counsel. Id. After such consultation, Petitioner completed the paperwork, and the Embassy of Trinidad issued an emergency travel certificate on March 12, 2001.

On April 3, 2001, the BIA denied Petitioner's request for a stay of the removal proceedings, finding there was little likelihood that the appeal would be sustained. Resp. Ex. p. 6.

On April 4, 2000, at 7:24 a.m., CST, Petitioner, escorted by two INS agents, boarded a Northwest Airlines flight to Miami, and at 1:14 p.m. CST departed in a British West Indies flight to Barbados, which flight arrived at 4:15 p.m. CST. Norum Decl., ¶ 12. Petitioner departed Barbados for Trinidad at 4:55 p.m. CST. Id. Petitioner was escorted by two Deportation Officers from Minnesota to Barbados. Id. At approximately 2:00 p.m. CST, Petitioner filed his petition for habeas relief pursuant to 28 U.S.C. § 2241. In said petition, Petitioner asks that he be returned to the United States, at the expense of the INS, and be allowed the opportunity to argue his motion to reopen his removal order on the merits.

Analysis

The Government initially argues that this Court does not have jurisdiction to determine the merits of the petition because Petitioner was not in custody at the time such petition was filed, as required by § 2241. The facts clearly show that at the time the petition was filed, Petitioner was aboard an airplane, escorted by two INS agents. Based on these facts, the Court finds that Petitioner was in custody at the time the petition was filed.

The Government further argues that the petition should nonetheless be denied as moot, as the Petitioner has already been deported. Although Petitioner has been deported and is no longer in custody, his petition is not moot if he can demonstrate that his removal carries concrete collateral consequences adequate to meet Article III's case or controversy requirement. See, Spencer v. Kemna, 523 U.S. 1 (1998). (in the parole revocation process, collateral consequences will not be presumed, rather petitioner must establish a concrete collateral consequence). Examples of consequences sufficient to establish an injury-in-fact are inability to vote, engage in certain businesses or inability to serve as a juror or hold office. Id., at 9. Whether or not a deportee suffers from collateral consequences to overcome mootness has not been addressed by the United States Supreme Court, or the Eighth Circuit. The courts that have addressed this issue have reached varying results. For example, in Ramirez v. Immigration & Naturalization Service, 86 F. Supp. 2d 301, 303-305 (S.D.N.Y. 2000), the district court recognized that collateral consequences may flow from an order of removal, such as ineligibility for visa and the possibility of being found guilty of a felony if a deported alien

attempted to reenter the US. Id. The court refused to presume these consequences, however, in light of the Supreme Court's holding in Spencer. Id. Instead, following the reasoning of the Tenth Circuit, the court required the petitioner to advance such arguments in his habeas petition. Id. 303-304 (relying on Sule v. I.N.S., No. 98-1090, 189 F.3d at 478 (table), 1999 WL 668716 at *2 (10th Cir. Aug. 27, 1999)). However, in Johnson v. Levine, 2001 WL 282719 (S.D.N.Y. 2001) the district court held that a petitioner who is deported cannot, as a matter of law, suffer from the types of adverse collateral consequences suffered by citizens, such as right to vote.

The Fifth Circuit has determined that a deported alien who by statute, is not eligible for admittance to the United States for a period of ten years from the date of removal suffers from a concrete collateral consequence sufficient to establish an injury-in-fact. Max-George v. Reno, 205 F.3d 194, 196 (5th Cir. 2000) vacated and remanded on other grounds, ___ S. Ct. ___, 2001 WL 726292 (U.S. Jun 29, 2001). The court further held that the risk of prosecution for future reentry is a presumed or hypothetical consequence that would not constitute a legitimate collateral consequence. Id. See also, Steele v. Blackman, 236 F.3d 130, 134 n. 4 (3rd Cir. 2001)(finding that deportation may carry concrete collateral consequences, such as an erroneous felony conviction will permanently bar of reentry.)

In this case, the Petitioner will be subject to a concrete collateral consequence as a result of his removal. He will not be eligible for admittance to the United States for a period of ten years, pursuant to 8 U.S.C. §

1182(a)(9)(A)(ii). Following the reasoning of the courts in the Third and Fifth Circuits, this Court finds that the instant petition is not moot.

The fact that Petitioner has shown that he is subject to collateral consequences does not end the inquiry. To meet the case-in-controversy requirement of Article III, § 2 of the Constitution, Petitioner must further show that such collateral consequence will "likely be redressed by a favorable court decision." Spencer, at 7 (citing Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990)). The Government argues that to remedy the collateral consequence to which Petitioner is subject would require the Court to reach the merits of the removal order. It is the Government's position that pursuant to the new permanent rules of the INA, any challenge to the merits of a final removal order must be brought before the Circuit Court of Appeals. Specifically, the Government argues that Section 242(a)(1), (e)(2) and (b)(9), read together, establish that review of Petitioner's claim may only be made before the circuit court. Petitioner, on the other hand, argues that this Court has jurisdiction to determine a habeas petition brought pursuant to § 2241, despite the amendments to the INA.

The question of whether a writ of habeas corpus under 28 U.S.C. § 2241 remains available to aliens was recently addressed by the United States Supreme Court in INS v. St. Cyr, 121 S.Ct. 2271, 2001 WL 703922 (U.S. Jun. 25, 2001). The Court held that despite certain amendments contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), the writ of habeas

corpus under § 2241 was not repealed and therefore remained available to aliens to raise pure questions of law.

In this case, given that Petitioner is no longer in custody, the only issues that remain for consideration concern the merits of the removal order, and the execution of the removal order. With regard to the merits of the removal order, if such challenge involved a pure question of law, Petitioner could arguably bring such challenge in a habeas petition. However, the challenges raised by Petitioner do not involve pure questions of law. The removal order at issue was entered based on the Immigration Judge's determination that Petitioner did not make the trip to Florida for his sister.

> If this Court genuinely believed that the Respondent had left Minnesota to go to Florida because of a genuine medical crisis for his only family member in the United States, the Court would likely grant this Motion. Simply put, the Court does not believe that the Respondent made such a trip.

Resp. Ex. p. 18. Because the Petitioner is challenging a factual determination made by the Immigration Judge, such challenge may not be brought under § 2241. See St. Cyr, 121 S. Ct. at 2282(noting that historically, courts in habeas actions generally did not review factual determinations made by the Executive, only legal determinations). Instead, such challenge must be brought pursuant to INA § 242(a)(1), 8 U.S.C. § 1252(a)(1), which affords review of final orders of removal before the circuit courts of appeal. Accordingly, the Court finds that it does not have jurisdiction under § 2241 to address Petitioner's challenge of the merits of the removal order.

The Court further finds that it does have not jurisdiction to address Petitioner's challenge to the execution of the removal order. Section 242(g), 8 U.S.C. § 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The Supreme Court has also addressed this section of the IIRIRA, holding that challenges to the Attorney General's discretion in executing a final order of removal is not subject to judicial review. Reno v. American-Arab Anti-Discrimination Committee, 119 S. Ct. 936 (1999).

Petitioner alleges that the INS secretly deported Petitioner in order to prevent Petitioner's counsel from seeking judicial relief. However, no stay was in place at the time that Petitioner was deported, and Petitioner points to no law or regulation that was violated by the manner in which the deportation took place. Accordingly, the Court finds that it is without jurisdiction to review the execution of the removal order pursuant to § 242(g).

Because the Court is without jurisdiction to provide Petitioner the requested relief, IT IS HEREBY ORDERED that the petition for a Writ of Habeas Corpus, and Complaint for Declaratory and Injunctive Relief is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date:
August 13, 2001

Michael J. Davis
Michael J. Davis
United States District Court